An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

PATRICK WILCOCK, A/K/A PATRICK
EDWARD WILCOCK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62804

**FILED**

MAY 29 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of first-degree murder with use of a deadly weapon, one count of robbery with use of a deadly weapon, two counts of possession of stolen property, one count of burglary while in possession of a firearm, and one other count of burglary. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Clark County firefighters responded to a fire at the residence of James LaCella, whom firefighters found dead in his recliner. An autopsy later revealed that LaCella died from a gunshot wound to the head. The police investigation found that several of LaCella's hobby toys were missing from his condominium.[1] Appellant Patrick Wilcock, who was known to be LaCella's friend, had sold some of LaCella's toys following his death. Wilcock was later arrested and charged with first-degree murder with the use of a deadly weapon, robbery with use of a deadly weapon, burglary, two counts of possession of stolen property, and another count of burglary. The jury ultimately convicted Wilcock on all charges. Wilcock appealed, arguing that the district court erred in allowing certain

_____

[1]Specifically, police discovered that remote control cars and trains, video game systems, and video games were missing from LaCella's residence following his murder.

15-16408

testimony and evidence. He also argues that dismissal is mandated due to the violation of his right to a speedy trial; there was insufficient evidence to support the convictions for first-degree murder, burglary, and robbery; the district court erroneously instructed the jury on robbery and the presumption of innocence; and the convictions for possession of stolen property violate the Double Jeopardy Clause. Wilcock contends that these errors, cumulatively, are sufficient to warrant a new trial.

*Todd House's testimony*

Wilcock asserts that the district court erred when it denied his motion to exclude Todd House's testimony and subsequently allowed House to testify at trial. According to Wilcock, the district court should have excluded House's testimony based on the attorney-client privilege, because (1) House and Wilcock had an attorney-client relationship, (2) Wilcock reasonably believed that he was consulting with an attorney, and (3) Wilcock sought and received legal services from House.

We review de novo a lower court's decision regarding the proper scope of the attorney-client privilege. *Las Vegas Sands Corp. v. Eighth Judicial Dist. Court*, 130 Nev. Adv. Op. 69, 331 P.3d 905, 910 (2014).

Here, both parties acknowledge that House is not an attorney authorized to practice law. Accordingly, the attorney-client privilege could only protect confidential communications between Wilcock and House if Wilcock held a *reasonable* belief that House was an attorney authorized to practice law. *See* NRS 49.065; NRS 49.095.

Essentially, Wilcock argues that he believed that House was an attorney because House so informed him. However, this argument only shows that Wilcock believed that House was an attorney, not that such a belief was reasonable. *See Strong v. State*, 773 S.W.2d 543, 549 (Tex.

Crim. App. 1989) (holding that invoking the attorney-client privilege "requires more than a mere belief that the individual consulted is a licensed attorney; that belief must be 'reasonable'").

To determine whether Wilcock's belief was reasonable, we would need evidence of the characteristics of an attorney-client relationship. None exist. Wilcock failed to support his assertion with any evidence that, for example, House informed Wilcock that he had attended a certain law school, that he was licensed in a certain jurisdiction, or that he practiced in a certain area of law. Wilcock's contention that House provided legal services is also belied by the record. House testified that he never reviewed any of the documents or pleadings in Wilcock's case.

Moreover, House's description of the conversations between himself and Wilcock (wherein Wilcock made hypothetical statements and spoke in the third person) similarly demonstrate that Wilcock did not reasonably believe that an attorney-client relationship existed. Lastly, Wilcock could not have reasonably believed that House could have represented him because at the time of their conversations House was incarcerated at CCDC awaiting sentencing for felony convictions.

We therefore conclude that Wilcock failed to prove that he reasonably believed that House was an attorney and, consequently, the attorney-client privilege does not protect Wilcock's communications with House. Accordingly, we conclude that the district court properly admitted House's testimony at trial.

Wilcock additionally argues that the court erred by failing to conduct an evidentiary hearing before denying his motion to exclude House's testimony. Wilcock did not request an evidentiary hearing or object to the district court's denial of his motion without having conducted an evidentiary hearing. Therefore, we review for plain error. *See*

*Ouanbengboune v. State*, 125 Nev. 763, 774, 220 P.3d 1122, 1129 (2009). While the Eighth Judicial District Court Rules allow a criminal defendant to file motions in limine, *see* EDCR 3.28, evidentiary hearings are not required as a matter of course, *Cohen v. United States*, 378 F.2d 751, 760 (9th Cir. 1967). At the hearing on Wilcock's motion, the district court determined that even if the district court accepted Wilcock's assertions as true, his mistaken belief was not reasonable. Therefore, because the court found that there was not a dispute regarding any fact underlying its decision, we conclude that the court was not required to conduct an evidentiary hearing.

*Admitted evidence*

Wilcock argues that the district court erred by admitting certain evidence, including words from his cellular phone's user text dictionary and the tables of contents from several books Wilcock owned.

A district court's decision to admit evidence is reviewed for an abuse of discretion. *See Holmes v. State*, 129 Nev. Adv. Op. 59, 306 P.3d 415, 418 (2013). The district court has considerable discretion to admit evidence and its determination will only be reversed if it is manifestly wrong. *Id.*

*The dynamic text dictionary from Wilcock's cellular phone*

Wilcock argues that the words from the dynamic text dictionary of his cellular phone, without context, were irrelevant, unfairly prejudicial, and invited speculation.

Because the State claims that Wilcock entered the words into the phone, and thereby the phone's dictionary, it must provide authentication that Wilcock authored the words typed into the phone. *See* NRS 52.015. In *Rodriguez v. State*, 128 Nev. Adv. Op. 14, 273 P.3d 845, 849 (2012), we held that "when there has been an objection to

admissibility of a [cellular] text message, the proponent . . . [must] provide sufficient direct or circumstantial corroborating evidence of authorship in order to authenticate the text message as a condition precedent to its admission" (citations omitted). We based our conclusion on the reasoning that "'cellular telephones are not always exclusively used by the person to whom the phone number is assigned.' . . . Thus, some additional evidence, 'which tends to corroborate the identity of the sender, is required.'" *Id.* (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. Ct. 2011).

In this case, the authorship of the phone's dictionary listings is as unclear as the authorship of the text messages in *Rodriguez*. The State did not present any evidence that Wilcock was the person who entered the words into his phone; it merely established that the words in the dictionary were at one time entered into the phone by "the user." But the State did not establish the user's identity for any given entry. Likewise, the State did not offer the circumstantial evidence suggested in *Rodriguez,* such as "the context and content of the text." *Id.* at 849. We therefore conclude that the district court abused its discretion by admitting this evidence without sufficient authentication.

Nevertheless, we conclude that the district court's error was harmless beyond a reasonable doubt. *See Cortinas v.* State, 124 Nev. 1013, 1023-24, 195 P.3d 315, 322 (2008) (holding that constitutional trial errors occurring during the presentation of the case to the jury may be reviewed for harmless error). The words were used to show that Wilcock may have researched murder methods on his phone. This proof could just as easily have been established by the books found in Wilcock's home or the books on his computers. Therefore, the trial court's error does not merit reversal. *See id.* 1027, 195 P.3d 324 (error is harmless where "it

appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (internal quotations omitted)).

*The Anarchist Cookbook and The CIA Book of Dirty Tricks*

Wilcock argues that the court violated his rights under the First, Sixth, and Fourteenth Amendments when it admitted portions of *The Anarchist Cookbook* and *The CIA Book of Dirty Tricks*. He contends that the books contain prejudicial and irrelevant material. Wilcock also asserts that the prosecution used the books as improper character evidence.

Generally, evidence is admissible if it is relevant. NRS 48.025. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. However, relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1).

We have previously held that books that are relevant are admissible. *See Surianello v. State*, 92 Nev. 492, 502, 553 P.2d 942, 948-49 (1976) (upholding admissibility of one book due to its relevance in establishing defendant's proximity to crime scene, but relevance of another book questionable when used to show motive or intent to commit certain acts). Further, other courts have held that *The Anarchist Cookbook* is admissible to show that a defendant was capable of committing the crime at issue. *See, e.g., People v. Mertz*, 842 N.E.2d 618, 654 (Ill. 2005) ("The defendant's possession of *Pipe and Fire Bomb Designs* and *The Anarchist's Cookbook* is sufficiently related to defendant's act of arson to support admission."); *State v. Adamson*, 665 P.2d 972, 982 (Ariz. 1983). And the Ninth Circuit, in *United States v. Ellis*, 147 F.3d 1131,

1135-36 (9th Cir. 1998), noted that *The Anarchist Cookbook* may be relevant to show intent, specifically, intended use of a weapon.

Here, giving due deference to the district court, the books appear to be relevant to whether Wilcock possessed the capability to start the fire in LaCella's condominium and to cover up his acts, as the books contain information on how to start fires without getting caught. Although the books contain other content that may be prejudicial, the books were not admitted into evidence in their entirety; only the tables of contents were admitted. In that sense, this case is similar to *Holmes*, 129 Nev. Adv. Op. 59, 306 P.3d at 420, where this court stressed that the admission of only a single, relevant stanza of a song, with a proper limiting instruction, alleviated the prejudice that could have been caused by admitting the entire song. Therefore, we conclude that the district court did not abuse its discretion by admitting portions of the books.

*Other issues*

We have reviewed Wilcock's remaining claims and conclude that none of them warrant reversal.

Wilcock claims that the district court erred in denying his motion for dismissal due to a violation of his right to a speedy trial. We conclude that dismissal was not warranted because a five-month delay due to a congested court calendar is not presumptively prejudicial and Wilcock failed to demonstrate the type of prejudice that the rule is intended to prevent. *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972) (discussing the necessary considerations in a claim of violation of the right to speedy trial).

Wilcock also asserts that insufficient evidence existed to support his convictions for first-degree murder, burglary, and robbery. Wilcock's argument is actually an argument against the jury's

interpretation of the evidence and the jury's inferences based upon the evidence. Because the jury may make inferences based upon the evidence, Wilcock's argument lacks merit. *See State v. Green*, 81 Nev. 173, 176, 400 P.2d 766, 767 (1965).

Wilcock next argues that the district court instructed the jury that robbery was a general intent crime when robbery should instead be a specific intent crime. Therefore, Wilcock argues the district court's instruction was erroneous. Wilcock thus urges this court to overrule *Litteral v. State*, 97 Nev. 503, 634 P.2d 1226 (1981), *disapproved of on other grounds by Talancon v. State*, 102 Nev. 294, 301, 721 P.2d 764, 768-69 (1986), and its progeny. Because Wilcock does not present any novel argument to persuade us that we should overturn *Litteral*, and because the district court properly instructed the jury, we affirm the trial court's instruction.

Further, Wilcock also objected to the court's presumption of innocence instruction because the jury was not instructed as to which elements were material. We have steadfastly affirmed the instruction language that the district court used in the instant case for the presumption of innocence, *see, e.g., Nunnery v. State*, 127 Nev. Adv. Op. 69, 263 P.3d 235, 259-60 (2011), and we therefore conclude that the district court did not abuse its discretion in its instruction.

Wilcock additionally asserts that his "rights to due process of law, equal protection, a fair trial and right against Double Jeopardy were violated by the district court's imposition of sentences for two counts of possession of stolen property." Because the district court convicted and sentenced Wilcock for robbery, he claims that he should not be convicted and sentenced for possessing the very same property. A conviction for robbery requires proof of force or the threat of force, which is not required

 

for a conviction for possession of stolen property. *See* NRS 200.380; NRS 205.275; *see also Barton v. State*, 117 Nev. 686, 692-94, 30 P.3d 1103, 1107-08 (2001) (holding that this court uses the test from *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether separate offenses exist for double jeopardy purposes), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006). Thus, because the offenses of robbery and possession of stolen property constitute separate offenses, the charges against Wilcock did not violate double jeopardy. *See Jackson v. State*, 128 Nev. Adv. Op. 55, 291 P.3d 1274, 1280 (2012) (noting that offenses with separate elements are considered separate offenses and do not invoke double jeopardy's protection from multiple punishments for the "same offense").

Lastly, Wilcock claims that he is entitled to a new trial based upon the cumulative effect of several trial errors. However, we conclude that the only error at trial was the admission of the dynamic text dictionary from Wilcock's cellular phone, which we found to be harmless. Therefore, we conclude that Wilcock is not entitled to a new trial.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

 

cc:    Hon. Douglas W. Herndon, District Judge
Special Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth Judicial District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A